Thank you, Your Honours. Good morning, and may it please the Court. Luis Bortez on behalf of the Petitioner, Mr. Singh-Dhaliwal. I'd like to reserve two minutes for rebuttal. Okay, keep your eye on the clock. The count's down, and we'll try to help. Okay, thank you, Your Honours. Your Honours, the REAL ID Act substantially changed the way that this Court can determine the credibility determination of an immigration judge. Particularly, it made a substantive change concerning the type of inconsistencies that give rise to a credibility determination. I'd like to start with the demeanor assessment and the credibility determination, because that is the one that's typically given the most deference in an IJ determination. 8 U.S.C. 1158 1B.1.3 permits the judge to evaluate demeanor, candor, and responsiveness, and as this Court held in Huang versus Holder, there's a strong deference that's provided because the judge is there looking at the witness, seeing their responsiveness, how they react, and these nonverbal cues that are often an issue of whether someone might not be truthful. Your Honour, the Huang Court went on and said that there's a critical examination about how these characteristics are put into the testimony, and these are things that you cannot look through to the transcripts. But here, the immigration judge made a demeanor assessment, but not based on any sort of nonverbal cues. In fact, the demeanor assessment was based on the substance of his testimony. He said that the immigration judge said that the petitioner was trying to tell a simplistic story and that he did not know what the goals were of this political party, but nowhere in there does it say that there was anything about his demeanor. Counsel, why does that... What was the judge supposed to know? So, we have the same rule of deference to our district court judges who see witnesses, and especially to juries who can assess the candor of the witnesses before them, and there are many nonverbal cues that might be hesitation, it might be a halting manner of speech, or somebody sort of rolling their eyes as though they're trying to recall something, or look at some notes that they may have squirreled in their pocket. So, there's a lot of things on there. So, when the IJ says, look, he just didn't seem to know his story, why can't we take account of that? Because the judge specifically noted to the substance of his story, not the way that he was telling his story, and he did make a... The IJ did say that he was being unresponsive, and the court in Juan did talk about how, if a petitioner is unresponsive... Yeah, and how would we measure being unresponsive in response to questions from a transcript? How could we tell that? Well, I think that there's two points to that, Your Honor. First, the Juan court specifically had mentioned that there was long gaps between answering. In the Juan court, they said, you know, you asked a question and the person was there thinking about the answer and being very cautious about what the consequence of the answer would be, and there was no indication of that here where the IJ made... Does that mean that there weren't gaps, or does it mean that the IJ failed to make the appropriate findings? I think that the IJ failed to make the appropriate findings. And what would be our basis for sending this back to the BIA on the grounds that the IJ failed to note gaps in the record? Sorry, Your Honor? Yeah, how do we tell the BIA? Does the rule... Does the record compel a contrary conclusion here? I don't think there's... How would we reverse something like this? Well, I don't think there's substantial evidence to show that there's any demeanor assessment here. I mean, if it goes back to the board, I think that the IJ should specify, and again, you know, these are recorded, and so we can go back and listen to the recordings and have the IJ... But there may be body language and other things that can't be captured in an oral transcript or on a tape. And that's correct, Your Honor, and I agree with that, and that's why the immigration judge should have made that finding, saying that there was this body language issue that is nowhere in his decision or in the record that was noted in Huang, where the IJ said, I'm making a note for the record that there is a noticeable pause between the answer. You know, as I read the IJ's opinion, it seemed to me when he got to the credibility... the demeanor, he was at the very end. He didn't say very much about it, and he said that if this were only based on demeanor, I wouldn't get there from here. What bothered him the most, and I think what bothers me the most, is that at the beginning he says only that his father is deceased, and then the story gets a lot better. By the time he comes in front of the IJ, the father has been killed by members of the Congress Party, and when members of the Congress Party are dealing with him, they threaten him, we'll do the same thing we did to your father. But he never said that at the beginning. That, to me, is very strong evidence that would allow the IJ to find adverse credibility. How do you respond to that? That, for me, is the harder part of the case. Yes, Your Honor, and so, I guess, to just finish up my point and answer your questions directly, and I agree with Your Honor that that could be a basis for adverse credibility determination, but it wouldn't be a basis for a demeanor determination that's given extra deference. To answer Your Honor's question about the omission of the father's murder, and the context of the father's murder, I think the Board erred in, I think, two really critical ways. First, before the Board, the petitioner tried to argue that this circuit case court of Zamenhof was a tool that could be used to look at the adverse credibility determination, and the Board, in footnote two, said that, which is a case that talks about whether a petitioner tells a much different story and a more compelling story, then that is a basis for an adverse credibility finding. But the Board said that that case was inapplicable to this case because it was a pre-Real ID Act case. And so, that is a legal error, saying, our hands are tied, we can't use this case. And I think this court in Lai specifically cited to, which is a post-Real ID Act case, specifically cited to Zamenhof and said that there are times that they recognize omissions as a basis for an adverse credibility finding. So, the fact that the Board said, we can't use that, we can't use this case to try to... But I don't think you really responded to Judge Fletcher's question, which is, your client has got inconsistencies. It doesn't have anything to do with whether the case is applicable or not. There are inconsistencies in that the story gets better and better and better. It is not corroborated in the letters that he gets from India. No, there isn't anybody who has said his father was murdered by the Congress Party and he's going to suffer the same fate if he gets returned to India. Well, Your Honor, I would disagree with the characterization that there are inconsistencies because there's nothing that contradicts that he was murdered or that he died from, for instance, like a natural cause. But there's nothing that establishes it either until an after-acquired fact. He doesn't put it in his application. It doesn't come in in the letters from anybody in India. It comes out on the stand, his father was murdered by the Congress Party. This is the first time anybody's heard this. Yes, Your Honor. So, I guess I would have to answer to that. One, it's definitely not contradicted by the record, though it is an additional fact that came out towards the end of the hearing. And I think this is where he really relies on Lye saying, you know, this is a third party that doesn't necessarily have to do with his harm. And I think one of the things that I would note for the court is that the court in Lye talked about kind of the overall assessment of how we make adverse credibility determinations on an omission. And there we had a case where the petitioner's wife was arrested and it wasn't mentioned in the application. And then there was other instances where other people were harmed. And so when we look at the overall package of how this testimony came out, he wasn't telling the story and in the middle of a narrative, he said, oh, this is what happened, kind of bolstering his claim. It looked like, if we look at the transcript, the petitioner's counsel was trying to get this out from the petitioner. There was leading questions that were trying to get this information out and explain why this omission wasn't done before. So it wasn't that he thought it up and then just said it. The transcript seems to indicate that this is information that the petitioner and the petitioner's counsel was trying to get out and then tried to explain why it wasn't in there before. Okay. You know, you're down to about a minute and a half. Let's hear from the government and then you'll have time to respond. Thank you, Your Honor. May it please this Court, my name is Andrew Oliveira. On behalf of the Respondent, Matthew Whitaker, the Acting Attorney General. The immigration judge in this case made an adverse credibility finding based on an omission of Singh Dhaliwal's claim that his father was murdered, inconsistencies regarding how Singh Dhaliwal knew who murdered him, and also a general demeanor finding. Congress has said that the adverse credibility finding is considered on the totality of the circumstances and the evidence in the record does not compel reversal of the immigration judge's adverse credibility finding. With respect to the demeanor finding. Why don't we start with the omission. Okay. If you'd like to start. I mean, that's the demeanor finding. I don't know. I don't think that the IJ did not rest the determination just on that. Correct. But, you know, you have to acknowledge that so far, at least, our cases have said that omissions can be relied upon as a basis for an adverse credibility determination only if they relate to things that happened to the petitioner himself, right? At least, or if you're going to, if you have a case that involves a third-party omission, I'd like to hear it because I didn't see any in your briefing. With respect to a specific third party that, no, there hasn't been a specific finding. We did cite to the unpublished case that says that harm to family members can be a basis for an applicant's eligibility for asylum. But the common theme throughout our cases has typically been we're much less forgiving of somebody who omits a fact about something that happened to them, and then all of a sudden at the hearing it's like, oh, I got beat 50 times instead of two. You know, that's kind of suspicious. But we've sort of said that when it's the omission of something that happened to a third party, you know, it's not like everybody puts every single detail in their application, and so we've been more lenient in that context. This case is in the middle somewhere, it seems to me, and I just wonder how do you, what is the rule that you think that we should announce here to govern this case? Well, I think the lie case is, does help, because in that case the third party omission related to fellow churchgoers. But here the third party is his father. The application for asylum specifically asks what harm has been done to you or your family. And the harm to his father is related to his claim, because he says that the Congress Party murdered his father and then threatened to do the exact same to him. So the omission is very related to his case. It's not some disinterested third party like in lie, where there was a greater degree of separation between the applicant and the third party. You know, as I read our case law, it does distinguish between happened to you and happened to somebody else. But I don't regard that as a sort of on-off switch. It rather, I think, is an instrument of trying to figure out, is this something we would reasonably expect someone to say if it had happened, and you knew about it as part of his case. And your argument is, well, if it happened to his father, and he was then threatened to happen to him in the same way it happened to his father by the same party, you would expect that. I think that's the argument. Correct. Not that there's a bright line rule between third party and non-third party. No, and I don't believe we made that point. And it is, as Judge Watford pointed out, a continuum, and we believe that this is an omission that he should have put in his application. What if he had said, when confronted with this omission, that my lawyer never asked me about any details that happened to other people. She just told me to put down on the application what happened to me. What about, and I know that's not this case, but in that scenario, would you still be standing there making the same argument, that that can be the basis for an adverse credibility determination? Well, as we've noted, an immigration judge is required to consider an explanation. They're not required to accept it, so it would depend if the immigration judge found that the applicant was being truthful and honest about that explanation. I could certainly see that that explanation would be accepted by an immigration judge. Well, I mean, in cases like Lye, where the third party, I agree with you, it's a much more distant kind of relationship between the petitioner and the person whose events that happened to that person are omitted. But there we, I think what we've said is that, as Judge Fletcher was suggesting, well, we wouldn't necessarily expect somebody to mention the fellow churchgoer when they're talking about what happened to them, right? And so the strength of your argument here is that, well, my goodness, this is so closely connected to the petitioner's own harm that, of course we would have expected, if this really happened, for him to say something. But that's what your argument hinges on, that inference that we're able to draw? Correct. And also, more broadly, just the totality of the circumstances that the immigration judge considered everything. It wasn't just solely the omission. It was also then the inconsistencies and the demeanor as well. And I just wanted to address a comment by Judge Bybee about there were the nonverbal factors that the immigration judge noted. He observed Singh Dhaliwal and determined that it seemed as if he was trying to remember a script or what he had written previously. So it wasn't solely based on his inability to explain what his party's politics were. The immigration judge did rely on the nonverbal cues. If there are no further questions, we ask that this court affirm the decision of the board and deny the petition for review. Thank you. Thank you. Mr. Orellano. Thank you, Your Honor. So addressing Judge Bybee's questions more directly about what do we do with whether it was reasonable to bring this up within this case. You know, the immigration judge said towards the end of his decision that if it wasn't for this adverse credibility factor, he would have found the petitioner eligible for asylum. What did you just say? That if it wasn't for this adverse credibility factor, that the immigration judge likely would have found the petitioner. Oh, I see. If the story were true. Right, if he was found credible. And so if we're looking at where the father's death fits in within the greater context of the story, I mean, the petitioner had mentioned that he worked for the Congress Party, that he was beaten up, and that he was threatened to be killed. All those things are true independent of whether the motives of the Congress Party, whether they killed the father or not. Well, they could be true. Right, they could be true. And so it's certainly that additional fact doesn't necessarily contradict the greater part of his story. And it would make very little sense for the petitioner to then add this, what would potentially could be a death knell in his asylum claim when he has an otherwise credible story and an otherwise winning story for his asylum claim. And so this, you know, this fact that the petitioner adds was certainly a smaller part of the greater context that he testified to and that he was able to provide details about and corroborating evidence when he was hurt, because he brought in medical evidence. And so we certainly think that this is more of a detail that was brought in particularly because it's a third party and nothing that was directly happened to him. And I say that I'm over my time, Your Honor. Thank you very much. Thank you both sides for your helpful arguments. Seeing no, Dolly Wall versus Whitaker submitted for decision. Next one this morning, Vincent versus Stewart.
judges: W. Fletcher, Bybee, Watford